## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TINA VETTER-CONLEY, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | Case No.:  25-1125 |
| v. | |
| **THE POST MILLENNIAL CORPORATION,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff, Tina Vetter-Conley, ("Plaintiff") brings this Class Action Complaint against Defendant, The Post Millennial Corporation, ("Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION & VENUE

1.     Plaintiff Tina Vetter-Conley is a resident and citizen of Wichita, Kansas.

2.     Defendant, The Post Millennial Corporation, is a Canadian corporation with a principal place of business located at 4950 Queen-Mary, Suite 100, Montreal, Quebec, H3W 1X3, Canada.

3.     Defendant is a news organization that focuses on current events, culture, and news analysis. Defendant offers options for audience support through donations and ad-free subscriptions.

4.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

5.     This Court has specific personal jurisdiction over Defendant because the injuries alleged arose from or relate to Defendant's contacts with the forum. Defendant entered into a news subscription agreement or other contract with Plaintiff in Kansas.

6.     Venue is proper under 28 U.S.C §1391(c) because Defendant is not a resident in the United States and may be sued in any judicial district.

## STATEMENT OF FACTS

7.     Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the sensitive personally identifiable information ("SPI") of roughly 57 million individuals, including, but not limited to: names, usernames, dates of birth, email addresses, plaintext passwords, account information, gender, payment information, IP addresses, data regarding political affiliation and political views, employment, and net worth.

8.     On May 2, 2024, Defendant learned of suspicious activity within its IT environment and determined that three (3) databases containing Plaintiff's personal information—which was entrusted to Defendant on the mutual understanding that Defendant would protect it against unauthorized disclosure—was accessed and exfiltrated by an unauthorized party (hereafter referred to as the "Data Breach").

9.     On, or around, May 3, 2025, cybercriminals leaked the databases to the dark web. "Roughly 34 million unique records were compromised, with email addresses topping the list at

about 33.8 million entries. Home addresses appeared in 11.2 million records, while phone numbers were tied to nearly 4.9 million users. Even more alarming was the inclusion of *plaintext passwords, enabling attackers to attempt immediate credential-stuffing campaigns on other platforms*. The breach data also included IP addresses linked to login events, gender markers, timestamps for account creation or last login, and subscription statuses-details that together paint a fuller picture of individual users' digital and personal profiles."[1]

10.     Despite the massive amount of data disclosed in the Data Breach, Defendant did not send out breach notice letters. To date, the details of the root cause of the Data Breach, the reason for the year plus delay in reporting the breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff, who retains a vested interest in ensuring that their SPI remains protected.

11.     Plaintiff was not notified that her data was involved in this Data Breach until recently, when a dark web monitoring service informed her that her data was leaked on the dark web.



12.     Plaintiff used her Gmail email to access her Post Millennial account. Unfortunately, an unauthorized individual attempted to takeover Plaintiff's Gmail account, which resulted in her

---

[1] https://databreach.com/breach/thepostmillennial.com-2024. (last accessed June 10, 2025).

being locked out of the account for roughly 30 days.  Plaintiff submitted information to verify her identity and reclaim her Gmail account but has been unsuccessful.

13.     Plaintiff has also received notice from Paypal regarding fraudulent charges that she believes is related to this Data Breach.

14.     Plaintiff used the same email and/or password for other online accounts and has spent time reviewing accounts for fraud, changing usernames and passwords, or creating new email accounts.

15.     As a result of the Data Breach, Plaintiff has suffered an actual injury, similar to an intangible harm remedied at common law. Defendant's failure to properly secure Plaintiff's SPI resulted in the unauthorized disclosure of Plaintiff's private information to cybercriminals. The unauthorized disclosure of Plaintiff's SPI constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendant's failure to adequately secure the SPI in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff.  The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

16.     Defendant's conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation. For example, with information like plaintext passwords, cybercriminals can "*launch automated attacks against email, banking, or social-media accounts*. At the same time, the exposure of physical addresses and phone numbers opened the door to highly targeted phishing attempts, identity theft, and even, in extreme cases, real-world harassment."[2]

17.     Plaintiff and Class Members whose data was leaked in this Data Breach must now "*be on the lookout for account takeover attempts* against accounts sharing the same email and

---

[2] https://databreach.com/breach/thepostmillennial.com-2024. (last accessed June 10, 2025).

password combination. … Because most people re-use their passwords across multiple accounts, this combination of work emails and plaintext passwords also creates an enterprise risk for bad actors to target workplace accounts using the leaked credentials."[3]

18.    One of the databases disclosed in the Data Breach contained information related to things like signatories to political petitions, political candidate supporters, election phone bank volunteers, and political donors for different causes. "This rich, qualitative data about individuals – such as their political party affiliation, political viewpoints, industry of employment, net worth, and social media presence – *makes it easier for threat actors to craft effective targeted phishing campaigns*."[4]

19.    The imminent risk of future harm resulting from the Data Breach is traceable to the Defendant's failure to adequately secure the SPI in its custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

20.    "For affected individuals, the psychological impact of knowing that both their online identities and home addresses were leaked cannot be overstated. Even after changing passwords and tightening privacy settings, users face the ongoing uncertainty of whether their data has already been traded on underground markets or used to craft convincing social-engineering attacks."[5]

21.    Plaintiff's and Class Members' exposure to the substantial risk of future exploitation caused or will cause them to: (i) spend money on mitigation measures like credit monitoring services and/or dark web searches; (ii) lose time and effort spent responding to the Data Breach; and/or (iii) experience emotional distress associated with reviewing accounts for

---

[3] https://spycloud.com/blog/the-post-millennial-data-breach-analysis (last accessed June 10, 2025).
[4] *Id.*
[5] https://databreach.com/breach/thepostmillennial.com-2024 (last accessed June 10, 2025).

fraud, changing usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of the Data Breach.

22.    As a result of the Data Breach, Plaintiff purchased (or renewed her subscription to) dark web monitoring and identity theft protection services, regularly monitors those programs, regularly checks her accounts for suspicious activity, and changed email addresses, passwords, or enabled multi-factor authentication on her accounts. The harm Plaintiff's suffered can be redressed by a favorable decision in this matter.

23.    As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of SPI; (iii) lost or diminished value of SPI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their SPI will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the data.

24.    Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant's inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

### Data Breaches Are Avoidable

25.    Upon information and belief, the Data Breach was a direct result of Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) adhere to its published privacy practices; (iii) implement reasonable data

protection measures for the collection, use, disclosure, and storage of personal information; and/or (iv) ensure its third-party vendors were required to implement reasonable data protection measures consistent with Defendant's data protection obligations.

26.    Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's SPI was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the SPI from those risks left the data in a dangerous condition.

27.    To detect and prevent cyber-attacks, Defendant could and should have implemented the following measures:

Reasonable Safeguards

    a.    Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

    b.    Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

    c.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

    d.    Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

    e.    Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

    f.    Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

    g.    Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

    h.    Configure firewalls to block access to known malicious IP addresses.

    i.    Set anti-virus and anti-malware programs to conduct regular scans automatically.

j.  Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

k.  Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

l.  Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

m.  Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

n.  Consider disabling Remote Desktop protocol (RDP) if it is not being used.

o.  Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

p.  Execute operating system environments or specific programs in a virtualized environment.

q.  Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

r.  Conduct an annual penetration test and vulnerability assessment.

s.  Secure your backups.

t.  Identify the computers or servers where sensitive personal information is stored.

u.  Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

v.  Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

w.  Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

x.  Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

y.  Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

z.  To detect network breaches when they occur, consider using an intrusion detection system.

aa. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

bb. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

cc. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

dd. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[6]

28.    Given that Defendant collected, used, and stored SPI, Defendant could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

29.    Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' SPI.

30.    Defendant knew and understood unencrypted SPI is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding SPI and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

***Plaintiff and Class Members Sustained Damages in the Data Breach***

---

[6] *See e.g.*, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed June 10, 2025).

31.     The invasion of the Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant's conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

32.     Additionally, Plaintiff and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their data was targeted by a sophisticated hacker known for stealing and disclosing sensitive data on the dark web. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to the Defendant's conduct.

33.     Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[7] With "Fullz" packages, cyber-criminals can combine multiple sources of SPI to apply for credit cards, loans, assume identities, or take over accounts.

34.     Given the type of targeted attack in this case, the sophistication of the criminal responsible for the Data Breach, the type of SPI involved in the Data Breach, hacker behaviors in prior data breaches, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their SPI was

---

[7] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm (last accessed June 10, 2025).

obtained by, or released to, criminals intending to utilize the SPI for future identity theft-related crimes or exploitation attempts.

35.    The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, or will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

36.    For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[8]

37.    As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

38.    Furthermore, Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiff and Class Members,

---

[8]*See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

collecting their SPI, using their SPI for profit or to improve the ability to make profits, and then permitting the unauthorized disclosure of the SPI, Plaintiff and Class Members were deprived of the benefit of their bargain.

39.    When agreeing to pay Defendant for products or services, consumers understood and expected that they were, in part, paying for the protection of their personal data, when in fact, Defendant did not invest the funds into implementing reasonable data security practices. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

## CLASS ALLEGATIONS

40.    Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

41.    The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**: All individuals residing in the United States whose personal data was accessed and acquired by an unauthorized party on, or about, May 2, 2024, as a result of the Data Breach (the "Class" or "Class Members").

42.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

43.    Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

44.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant, upon information and belief, 57 million individuals were impacted by the Data Breach.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, includes the following:

    a.    Whether and to what extent Defendant had a duty to protect the SPI of Plaintiff and Class Members;

    b.    Whether Defendant had a duty not to disclose the SPI of Plaintiff and Class Members to unauthorized third parties;

    c.    Whether Defendant failed to adequately safeguard the SPI of Plaintiff and Class Members;

    d.    Whether Defendant required its third-party vendors to adequately safeguard the SPI of Plaintiff and Class Members;

    e.    When Defendant actually learned of the Data Breach;

    f.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their SPI had been compromised;

    g.    Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their SPI had been compromised;

    h.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    i.    Whether Defendant adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

    j.    Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

    k.    Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

46.    <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

47.    <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

48.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

49.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually

afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

50.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

51.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

52.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

53.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the SPI of Class, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

54.     Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

55.     Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether Defendant failed to timely notify the Plaintiff and the Class of the Data Breach;

    b. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, sharing, storing, and safeguarding their SPI;

    c. Whether Defendant's security measures to protect its network were reasonable in light of industry best practices;

    d. Whether Defendant's (or their vendors') failure to institute adequate data protection measures amounted to negligence;

    e. Whether Defendant failed to take commercially reasonable steps to safeguard consumer SPI;

    f. Whether Defendant made false representations about their data privacy practices and commitment to the security and confidentiality of customer information; and

    g. Whether adherence to industry standards and best practices for protecting personal information would have reasonably prevented the Data Breach.

### CAUSES OF ACTION
**(*On behalf of Plaintiff and the Class*)**

### COUNT 1: NEGLIGENCE/WANTONNESS

56.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

57.     Defendant obtains sensitive SPI from its subscribers, writers and editors, including Plaintiff and Class Members, in the ordinary course of business.

58.     Defendant had full knowledge of the types of SPI it collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

59.     By collecting, storing, sharing, and using the Plaintiff's and Class Members' SPI, Defendant assumed a duty to use reasonable means to safeguard the personal data it obtained. Defendant's duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology environment; (ii) contractually obligated its vendors to adhere to the requirements of Defendant's privacy policy; (iii) complied with applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of Defendant's and/or its vendors' data processing activities; (v) regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach event.

60.     Defendant also had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce.

61.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove SPI that Defendant was no longer required to retain.

62.     Defendant had a duty to notify Plaintiff and the Class of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any fraudulent usage of their SPI.

63.     Defendant violated Section 5 of the FTC Act by failing to adhere to its own privacy policy regarding the confidentiality and security of Plaintiff and Class Members information.

Defendant further violated Section 5 of the FTC Act, and other state consumer protection statutes by failing to implement an information security plan or use reasonable security measures to protect SPI. Defendant's violations constitute negligence and/or wantonness.

64.    Defendant's failure to adhere to its data privacy and security obligations was a reckless disregard for the Plaintiff's and Class Members' privacy rights.  Defendant knew, or should have known, that its failure to take reasonable precautions might result in injury to Plaintiff and Class Members. The negligent and wanton acts or omissions committed by Defendant includes, but is not limited to, the following:

    a. Failing to designate a qualified individual to implement and supervise its information security program.

    b. Failing to conduct an assessment to determine foreseeable risks and threats – internal and external – to the security, confidentiality, and integrity of customer information.

    c. Failing to design and implement safeguards to control the risks identified through the risk assessment.

    d. Failing to encrypt personally identifying information in transit and at rest.

    e. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' SPI.

    f. Failing to adequately monitor the security of their networks and systems.

    g. Allowing unauthorized access to SPI.

    h. Failing to detect in a timely manner that SPI had been compromised.

    i. Failing to remove former customers' SPI it was no longer required to retain.

    j. Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

65.    Plaintiff and Class Members are within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statue was intended to guard against.

66.    The injuries resulting to Plaintiff and the Class because of Defendant's failure to use adequate security measures was reasonably foreseeable.

67.     Plaintiff and the Class were the foreseeable victims of a data breach. Defendant knew or should have known of the inherent risks in collecting and storing SPI, the critical importance of protecting that SPI, and the necessity of updating, patching, or fixing critical vulnerabilities in its network.

68.     Plaintiff and the Class had no ability to protect the SPI in Defendant's possession. Defendant was in the best position to protect against the harms suffered by Plaintiff and the Class as a result of the Data Breach.

69.     But for Defendant's breach of duties owed to Plaintiff and the Class, their SPI would not have been compromised. There is a close causal connection between Defendant's failure to implement reasonable security measures to protect the SPI of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class.

70.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their SPI; (iii) lost or diminished value of SPI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their SPI will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the SPI.

71.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

72.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate monitoring and protection to all affected by the Data Breach.

## COUNT 2: BREACH OF IMPLIED CONTRACT

73.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

74.     Defendant obtains sensitive PII from Plaintiff and Class Members, in the ordinary course of providing services.

75.     In so doing, Plaintiff and Class Members entered implied contracts with Defendant by which Defendant agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information it collects and stores.

76.     Plaintiff and Class Members would not have entrusted their SPI to Defendant in the absence of an expressed or implied promise to implement reasonable data protection measures.

77.     Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

78.     Defendant breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendant's web site, privacy notice, and in other documents, all of which created a reasonable expectation that the personal information Defendant collected would be adequately protected and that the Defendant would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

79.    As a direct and proximate result of the Defendant's breach of an implied contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their SPI; (iii) lost or diminished value of SPI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their SPI will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the SPI.

80.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate monitoring/protection to all affected by the Data Breach.

## COUNT 3: UNJUST ENRICHMENT

81.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

82.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

83.    By obtaining their SPI in connection with subscriptions or employment, Plaintiff and Class Members conferred a monetary benefit on Defendant. Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit.

84.    By collecting the SPI, Defendant was obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised or stolen.

21

85.     Defendant failed to secure Plaintiff's and Class Members' SPI and, therefore, it would be unjust for Defendant to retain any of the benefits that Plaintiff and Class Members conferred upon Defendant without paying value in return.

86.     As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their SPI; (iii) lost or diminished value of SPI; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their SPI will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the SPI.

87.     Plaintiff and Class Members are entitled to restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## COUNT 4: INVASION OF PRIVACY

88.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

89.     Plaintiff and Class Members had a legitimate expectation of privacy in their sensitive information such as financial information, political affiliation, and account/password combinations. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

90.    Defendant owed a duty to Plaintiff and Class Members to keep their SPI confidential.

91.    Defendant permitted the public disclosure of Plaintiff's and Class Members' SPI to unauthorized third parties.

92.    The SPI that was disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential. The public disclosure of the type of SPI at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

93.    Defendant permitted its information technology environment to remain vulnerable to foreseeable threats, which created an atmosphere for the Data Breach to occur. Despite knowledge of the substantial risk of harm created by these conditions, Defendant intentionally disregarded the risk, thus permitting the Data Breach to occur.

94.    By permitting the unauthorized disclosure, Defendant acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the SPI at issue was not newsworthy or of any service to the public interest.

95.    Defendant was aware of the potential of a data breach and failed to adequately safeguard its systems and/or implement appropriate policies and procedures to prevent the unauthorized disclosure of Plaintiff's and Class Members' data.

96.    Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' SPI to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

97.    Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

**COUNT 5: UNFAIR AND DECEPTIVE TRADE PRACTICES**

98.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

99.    Plaintiff and Class Members are employees, subscribers, or consumers of Defendant's services. Defendant requires its employees, subscribers, or consumers, including Plaintiff and Class Members, to submit SPI in the ordinary course of providing products or services.

100.    Defendant gathered and stored the SPI of Plaintiff and Class Members as part of its business. Plaintiff and Class Members entrusted Defendant with their SPI with the understanding that Defendant would adequately safeguard their information.

101.    Under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies. Such behavior by Defendant also constitutes a false, misleading, or deceptive act under state Unfair and Deceptive Trade Practices Act.

102.    Defendant violated the state consumer protection statute by failing to adhere to its own privacy policy regarding the confidentiality and security of Plaintiff's and Class Members' information. Defendant further violated the state consumer protection statute by failing to use reasonable measures to protect SPI.

103.    Defendant's conduct created a likelihood of confusion or misunderstanding regarding its actual data privacy and security practices. Defendant promised to protect Plaintiff's and Class Members' SPI via its privacy policies/notices, but allowed the unauthorized access to this personal information; Defendant failed to disclose material facts that the Plaintiff's and Class Members' SPI would be disclosed to unauthorized third parties; Defendant failed to obtain

Plaintiff's and Class Members' consent in transmitting their SPI to a third party; and knowingly violated industry and legal standards regarding the protection of Plaintiff's and Class Members' SPI.

104.    Defendant's unfair or deceptive acts affected public interests, including those of Plaintiff and Class Members. Defendant knew or should have known that it was likely to mislead its customers who were acting reasonably. Defendant engaged in unfair or deceptive practices by breaching its duties to provide technical and administrative data security policies, procedures, and practices. Defendant's failure to adhere to its published privacy policies and procedures is offensive to established public policy and is substantially injurious to consumers as evidenced by the massive Data Breach.

105.    Defendant's deceptive acts, as described herein, proximately caused Plaintiff and Class Members damages.

106.    As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages including, but not limited to: (i) invasion of privacy; (ii) theft of their SPI; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) mitigation costs and expenses; and (v) attorneys' fees and court costs.

107.    Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their SPI and remain at imminent risk that further compromises of their SPI will occur in the future.

108.    Plaintiff and Class Members have suffered irreparable injury and will continue to suffer injury as a result of Defendant's deceptive trade practices, which places Plaintiff and Class Members at imminent risk that further compromises of their SPI will occur in the future. As such,

the remedies available at law are inadequate to compensate for that injury. Accordingly, Plaintiff and Class Members also seek to obtain a judgment declaring, among other things, the following:

    a.  Defendant continues to owe a legal duty to secure SPI and to timely notify consumers of a data breach.

    b.  Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff and Class Members' SPI.

109.    The Court also should issue corresponding prospective injunctive relief requiring that Defendant employs adequate data protection practices consistent with law and industry standards.

110.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiff will likely be subjected to fraud, identity theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

111.    The issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by encouraging Defendant to take necessary action to prevent another data breach, thus eliminating the additional injuries that would result to Plaintiff and the multitude of individuals whose SPI would be at risk of future unauthorized disclosures.

112.    As a result of the Defendant's false, misleading, or deceptive acts, regarding its data security practices, the consuming public in general, Plaintiff, and Class Members suffered injuries including, but not limited to, the future and continued risk their SPI will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains under Defendant's possession or control and is subject to further unauthorized

disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the SPI.

113.    Plaintiff and Class Members are entitled to attorneys' fees, costs, and injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; and (ii) to provide adequate monitoring and protection to all affected by the Data Breach.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and counsel for Plaintiff(s) as Class Counsel;

B.    For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    Ordering Defendant to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Class;

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper; and

I.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: June 11, 2025

Respectfully Submitted,

*/s/James Rosemergy*
James J. Rosemergy (Bar No. 79248)
**CAREY DANIS & LOWE**
8235 Forsyth Blvd., Suite 1100
St. Louis, Missouri 63105
Ph: 314-725-7700
jrosemergy@careydanis.com

Paul J. Doolittle (*pro hac vice* forthcoming)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
        cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*